CLEMM AND ASSOCIATES, LLC
Mark C. Clemm, Esquire, I.D. No. 36665
Katie M. Clemm, Esquire, I.D. No. 320733
488 Norristown Road, Suite 140
Blue Bell, PA   19422
(484) 539-1300                                   Attorneys for Defendants/Respondents
mclemm@clemmlaw.com
kclemm@clemmlaw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GERRELL MARTIN and CURTIS SAMPSON | : | CIVIL ACTION |
| | : | |
| v. | : | NO.: 2:17-cv-01139-JHS |
| | : | |
| BART E. LEVY, ESQUIRE and | : | |
| LEVY LAW, LLC | : | |

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' SECOND MOTION TO EXCLUDE THE TESTIMONY OF DAVID DENENBERG**

Defendants Bart E. Levy, Esquire and Levy Law, LLC, by and through their attorneys Clemm and Associates, LLC, hereby file this brief in opposition to Plaintiffs' Second Motion to Exclude the Testimony of David Denenberg (the "Motion").

I.      <u>INTRODUCTION</u>

Defendants Bart E. Levy, Esquire and Levy Law, LLC (collectively, "Levy") were retained by the owner and landlord of a property in Philadelphia, Argentina Perez Irineo (the "Owner"), to file a landlord-tenant complaint against Plaintiffs (tenants in the property), based upon various defaults by the tenants under the lease between the parties.  The Owner (or her agents) indicated to Levy that the Plaintiffs had not paid rent for three months.  Therefore, on November 7, 2016, Levy sent a Notice of Default letter to Plaintiffs.  The Plaintiffs did not respond to that letter. On November 8, 2016, Levy, on behalf of the landlord, filed a landlord-tenant complaint (the "LT Complaint") against Plaintiffs in the Philadelphia Municipal Court

1

(the "LT Action").  Levy filed the Complaint after having conferred with his client regarding all of the allegations stated in the LT Complaint.  Other than the Notice of Default and LT Complaint, Levy had no further direct communications with Plaintiffs.  Ultimately, the LT Complaint was withdrawn on March 2, 2017.

II.     STATEMENT OF PERTINENT FACTS AND PROCEDURAL HISTORY

Plaintiffs initiated this action on March 15, 2017 by filing a complaint.  Defendants filed an answer to the complaint on May 15, 2017.  The parties participated in a Status Conference on July 13, 2017.   The parties participated in a Settlement Conference on October 16, 2017. Discovery has been completed.  Plaintiffs filed a Motion for Partial Summary Judgment on March 2, 2018 which was denied on July 24, 2018.   Defendants supplemented its initial disclosures on June 13, 2018 to include David Denenberg, Esquire as a fact witness shortly after Defendants learned that Mr. Denenberg had knowledge of certain relevant facts and was willing and available to testify on behalf of Defendants.  Counsel for Defendants promptly thereafter advised counsel for Plaintiffs that Mr. Denenberg would be testifying regarding the practices and procedures of Philadelphia attorneys and judges in landlord-tenant matters in Philadelphia Municipal Court and that they would not object to the deposition of Mr. Denenberg if Plaintiffs wished to take his deposition.  The parties have exchanged copies of Trial Exhibits and proposed stipulations.  Plaintiffs filed a Motion to Exclude Testimony of David Denenberg on June 21, 2018, to which Defendants responded on July 5, 2018.   The parties filed their Pre-Trial Memoranda on June 27, 2018.  Plaintiffs filed three motions in limine on July 11, 2018 to which Defendants responded on July 24, 2018.  Defendants filed an Offer of Proof regarding David Denenberg on July 31, 2018.  The Court denied Plaintiff's Motion to Exclude Testimony of David Denenberg on August 6, 2018.  The parties participated in a Settlement Conference before the Honorable Carol Sandra Moore Wells on August 30, 2018 but were unable to settle the case. The deposition of David Denenberg was taken on September 17, 2018.  Plaintiffs filed a second Motion to Exclude Testimony of David Denenberg on September 28, 2018.  There is a Pre-Trial Conference scheduled for October 31, 2018 at 3:30pm before the Honorable Joel H. Slomsky. The trial in this case is currently scheduled to commence on November 8, 2018.

III.   QUESTIONS PRESENTED

1.    Should Plaintiffs' Second Motion to Exclude the Testimony of David Denenberg be denied because Mr. Denenberg will testify at trial as a fact witness under Federal Rules of Evidence 602 and 701?

**Suggested Answer:   Yes.**

2.    Should Plaintiffs' Second Motion to Exclude the Testimony of David Denenberg be denied because Mr. Denenberg's testimony will relate to facts which support the Defendants' bona fide error defense and not a mistake of law defense under the FDCPA?

**Suggested Answer:   Yes.**

3.    Should Plaintiffs' Second Motion to Exclude the Testimony of David Denenberg be denied because David Denenberg will be testifying within the parameters of Defendants' Offer of Proof Regarding the Testimony of David Denenberg, which was accepted by this Court pursuant to the Order dated August 6, 2018 denying Plaintiffs' first Motion to Exclude Testimony of David Denenberg?

**Suggested Answer:   Yes.**

IV.   ARGUMENT

**A.  Mr. Denenberg will be testifying at trial as a fact witness under Federal Rules of Evidence 602 and 701.**

The Federal Rules of Evidence define an expert witness as "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education . . ." who "may testify in the form of an *opinion* or otherwise . . ." F.R.E. 702 (emphasis added).

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. F.R.E. 701.

> A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.  Evidence

3

to prove personal knowledge may consist of the witness's own testimony. This rule does not apply to a witness's expert testimony under Rule 703. F.R.E. 602.

Rules 602 and 701 in combination provide that an opinion of a nonexpert witness is admissible if based upon personal knowledge and helpful to the trier in fact in determining a fact of consequence. Opinions of witnesses as to the routine practice of an organization or habit of an individual based upon personal knowledge of the witness should normally be permitted on such grounds. <u>Fecho v. Eli Lilly and Co.</u>, 914 F.Supp. 2d 130, 141 (D. Mass. 2012)(citing Michael H. Graham, <u>Handbook of Federal Evidence</u> §406:4 (6th ed. 2006)).

Unlike an expert's opinion, a layman's opinion must be rationally based on the witness's perception. <u>Id.</u> Under the rule, courts allow lay witnesses to express opinions about a business based on the witness's own perceptions and knowledge and participation in the day-to-day affairs of the business. <u>Id.</u> at 142 (citing <u>United States v. Munoz-Franco</u>, 487 F.3d 25, 35-36 (1st Cir. 2007)(internal citations omitted). The Third Circuit Court has consistently allowed testimony concerning business customs and practices. <u>U.S. v. Fallon</u>, 470 F.3d 542, 547 (3d Cir. 2006)(referencing <u>United States v. Leo</u>, 941 F.2d 181, 196 (3d Cir. 1991)(providing that such evidence is relevant to explain the practice of the industry in question in the case and to establish what someone with the defendant's extended background in the industry probably would know)). The Court in <u>Fallon</u> found that prohibiting a fact witness from testifying as to industry custom and practice was error. <u>Id.</u> <u>See also</u> <u>Fecho</u>, *supra,* 914 F.Supp. 2d at 142(finding that a surgeon's opinion testimony about the standard medical practice in the Hazleton area was proper under F.R.E. 701 because he practiced medicine as a surgeon in the area for 30 years, was intimately familiar with the small community of doctors who practiced in the Hazleton area including the defendant, and therefore had the requisite knowledge within the meaning of Rule 701(a), and his opinion was helpful to determine an issue in the case); <u>United States v. Thompson</u>, 229 F.Supp. 3d 91, 94 (D. Mass. 2012)(finding that two proffered witness on double breasted operations in the construction industry could testify regarding their observations of industry custom and practice under F.R.E. 701 because one had personal knowledge of multiple double breasted operations from his twenty-plus years as the Executive Director of the Building Trades Employers Association and the other was an executive of an environmental consulting company who had experience working with asbestos abatement companies and clients who retained those companies, had experience with construction contract bidding, and that through

that experience he commonly observed the existence of a union company and nonunion company operating out of the same location with similar names sharing management and laborers).

Under the standards agreed to by the parties in their briefs regarding when a lay witness may testify in a way which includes an opinion (FRE 602 and FRE 702), it is obvious that the testimony of Mr. Denenberg meets those standards. Mr. Denenberg's testimony concerning the practices and procedures of attorneys and judges in the Philadelphia Municipal Court is rationally based upon his perception, will clearly be helpful to determine facts in issue (the facts underlying Levy's bona fide error defense), and is not based upon any scientific, technical or other similar specialized knowledge.

Plaintiffs' last point in their Brief supports the position that Mr. Denenberg's testimony is admissible and relevant in this case. Mr. Denenberg will not be testifying regarding the specific practices and procedures of individual Philadelphia Municipal Court attorneys and whether they were or were not acceptable practice in Philadelphia Municipal Court (as an expert would), but instead will be testifying regarding his general observations of industry standards, practices, and procedures regarding landlord-tenant matters in the Philadelphia Municipal Court. Mr. Denenberg's testimony regarding the general practice in Philadelphia Municipal Court does not constitute hearsay because he will be testifying regarding various rulings which he observed and heard rather than individual statements made by a specific judge or attorney. Although the specific statements made by a particular attorney or a particular judge could conceivably be considered hearsay, the multiple cases and decisions observed and heard by Mr. Denenberg while participating in landlord-tenant cases in Philadelphia Municipal Court constitute the basis for his acquired knowledge concerning those practices and procedures. Human beings routinely acquire knowledge in this fashion and if such acquired knowledge would be precluded based upon the fact that it was obtained through sight or hearing from multiple sources over the course of time, no witness would ever be allowed to testify because all such acquired knowledge would be considered hearsay. This is obviously not the law.

Mr. Denenberg is a Philadelphia attorney who practices mainly in the Philadelphia Municipal Court in landlord-tenant matters. Mr. Denenberg has been practicing law in Philadelphia, and specifically the Philadelphia Municipal Court, for over 30 years. He is in Philadelphia Municipal landlord-tenant court at least three times a week and represents the second largest landlord in the city of Philadelphia. He files thousands of cases each year. He also

represents hundreds of tenants, many of which he represents on a pro bono basis. *See 9/17/18 deposition of David Denenberg - Plaintiffs' Exhibit "A"- at pp. 41:3-24, 42:1-22.*   Mr. Denenberg has taught Municipal Court CLE courses.   *See 9/17/18 deposition of David Denenberg - Plaintiffs' Exhibit "A"- at pp. 52:4-24, 53:1-12, 54:21-24, 55:1-8.*

Mr. Denenberg is specifically familiar with the Philadelphia Code and what was required under the Code in order for a landlord to file an action to collect rent from a delinquent tenant. Included in those requirements are a residential rental license and a certificate of rental suitability. He testified that there could be certain consequences for the failure to provide the residential license to the Municipal Court but that it would depend upon which Municipal Court judge was hearing the case. Mr. Denenberg testified that some of the Municipal Court judges interpret section 102 of the Code to require a certificate of rental suitability in order to get possession or rent but that other judges did not enforce that requirement. *See 9/17/18 deposition of David Denenberg - Plaintiffs' Exhibit "A"- at pp. 60:20-24, 61:1-24, 62:1-14.*

Mr. Denenberg is specifically familiar with the practice and procedures of both the Municipal Court judges and the common pleas court judges who hear appeals from Municipal Court landlord-tenant decisions. He was able to specifically cite Municipal Court decisions which supported the procedures utilized by Levy which were appealed to the Court of Common Pleas and affirmed by the Court of Common Pleas. He referred to hundreds of cases brought in the Municipal Court where a landlord did not have a current residential rental license and where 6 out of 10 Municipal Court judges allowed the landlord to collect back rent even without a current residential rental license. Those judges would allow the retroactive collection of rent or if a tenant did not come in and defend and raise the lack of a rental license as an affirmative defense, relief would be granted to the landlord. Mr. Denenberg stated that he was familiar with this practice and procedure during 2016 based upon his observations and based upon his hearing Municipal Court judges make rulings in hundreds of cases. Those Municipal Court decisions were not contained in any written opinions because Municipal Court decisions are given verbally.  Mr. Denenberg was familiar not only with the decisions rendered by Municipal Court judges in other cases but also with regard to his own cases. He confirmed that only some of the Municipal Court judges would enforce the requirement of a rental suitability certificate; some of the Municipal Court judges would not. He has firsthand knowledge that many attorneys regularly demanded back rent on behalf of their landlord clients even when they were not in compliance

6

with the rental license requirement based upon seeing and hearing multiple decisions to that effect as well as reviewing those types of decisions on line. *See 9/17/18 deposition of David Denenberg - Plaintiffs' Exhibit "A"- pp. 63:20-24, 64:1-13, 65:9-24, 66:1-24, 67:1-4, 67:13-21, 68:7-15, 69:14-20, 91:3-24, 100:7-24, 101:1-24, 102:1-12, 111:18-24, 112:1-4, 116:14-24, 117:1-11.*

Mr. Denenberg testified at length in his deposition concerning what the Philadelphia Code required when filing a landlord-tenant complaint. One of the preprinted allegations in the form complaint involved the habitability of a property for which possession was being sought. Mr. Denenberg testified that a landlord-tenant complaint could be filed even if there were outstanding Philadelphia Department of Licensing and Inspection ("L and I") violations because such violations did not necessarily always rise to the level of making the premises uninhabitable. Therefore, many attorneys (including Mr. Denenberg) filed landlord-tenant complaints despite the presence of L and I violations.

In 2016, when representing a landlord, Mr. Denenberg would obtain certain information from his client including the landlord's name and address, telephone number, and email address, and he would ask for three documents: the lease, a ledger page showing unpaid rent and a residential housing license. After the amendments to the Philadelphia Code in 2018, he would also then ask the landlord client for the additional information/documents required by those amendments including a certificate of rental suitability, proof of how that certificate was provided to the tenant and whether the landlord client was aware of any L and I violations. He would accept the representations made by his client with regard to all of the foregoing information/documents and he would rely upon that information and those representations when filing the landlord-tenant complaint. If he had not asked his landlord client if that client was aware of any L and I violations, he would sometimes go on the L and I website to look but he could not rely upon that. In 2016, he and many other lawyers with similar practices did not always get confirmation whether or not there were outstanding L and I violations because that was typically an affirmative defense that would be raised by the tenant, if appropriate. All of this was consistent with the way that Levy obtained information from his landlord clients, prepared and filed his landlord-tenant complaints and conducted hearings in the Philadelphia municipal court. *See 9/17/18 deposition of David Denenberg - Plaintiffs' Exhibit "A"- pp. 70:8-24, 71:1-4, 73:13-24, 74:1-10, 75:6-10,76:23-24, 77:1-7, 79:1-24, 80:1-6, 81:3-21, 87:5-15.*

Mr. Denenberg is familiar with landlord-tenant attorneys who focus a majority of their practice in the Philadelphia Municipal Court for landlord-tenant matters based upon his personal observations of them in court.   Mr. Denenberg will be called to testify regarding the practice and procedure in the Philadelphia Municipal landlord-tenant court in 2016 (when the LT Complaint was filed) and 2017 and 2018 (after certain amendments to the Philadelphia Code which modified certain procedures/requirements in landlord-tenant cases) based upon his personal experience in the Philadelphia Municipal landlord-tenant court.   Mr. Denenberg will also testify regarding his own practices and procedures, as a seasoned attorney representing both landlords and tenants for many years, during that same time frame. Mr. Denenberg's testimony will be adduced in part to provide facts which support Levy's bona fide error defense and which show that Levy was following customs and procedures which were standard practice during the 2016 and 2017 timeframe.

### B.  Mr. Denenberg will be testifying regarding the bona fide error defense, not a mistake of law defense, under the FDCPA.

Mr. Denenberg will not be "interpreting the law and instructing the jury accordingly" as stated by Plaintiffs, but rather testifying regarding the industry practices and procedures in Philadelphia Municipal Court, which includes testimony regarding Philadelphia Municipal Court judges' decisions.  This is not an interpretation of the law, but rather observations of the industry standards and practice.   Testimony regarding this standard and practice is relevant and permissible to support Defendants' bona fide error defense.  Plaintiffs erroneously suggest that Mr. Denenberg is being offered to testify as to the "governing law".  However, Mr. Denenberg's testimony will simply establish that Levy's practices and procedures in 2016 were consistent with the practices and procedures followed by many attorneys who practiced in the Philadelphia Municipal Court at that time as well as the judges who presided over cases in the Philadelphia Municipal Court at that time. Any reference to the Philadelphia Code will be in conjunction with those practices and procedures, not with the law which will be applied by the Court to determine whether or not Levy violated the FDCPA. Mr. Denenberg will not testify concerning Levy's compliance (or noncompliance) the provisions of the FDCPA, which is in fact the "governing law" in this case.

Under the bona fide error defense to the FDCPA, a debt collector may not be held liable under the FDCPA if the debt collector shows by a preponderance of evidence that the *violation* was not intentional and resulted from a bona fide *error* notwithstanding the maintenance of procedures reasonably adapted to avoid any such *error*. Kort v. Diversified Collection Servs., Inc., 394 F.3d 530, 536 (7th Cir. 2005)(citing 15 U.S.C. §1692k(c). To qualify for the bona fide error defense, a debt collector must show that: (1) the presumed FDCPA violation was not intentional; (2) the presumed FDCPA violation resulted from a bona fide error; and (3) that the debt collector maintained procedures reasonably adapted to avoid any such error. Id. at 537 (citing Jenkins v. Heintz, 124 F.3d 824, 834 (7th Cir. 1997)). In Kort, a debt collector was sued by the plaintiff for violating the FDCPA and specifically for not complying with the Higher Education Act ("HEA"). Id. at 532. The HEA permits guarantors to administratively garnish a debtor's wages. Id. at 533. However, there is an exception from wage garnishment under the HEA's unemployment exemption. Id. A debtor who successfully invokes this exemption can avert wage garnishment during the first twelve months on the job. Id. The Department of Education amplified this point in a regulation stating: "The guaranty agency may not garnish the wages of a [debtor] whom it *knows* has been involuntarily separated from employment until the [debtor] has been reemployed continuously for at least 12 months." Id. (citing 34 C.F.R. §682.410(b)(9)(i)(G). To ensure compliance with the HEA and the corresponding regulations, the DOE drafted a form notice for debt collectors to use in initiating garnishment proceedings. Id. The form handles the HEA unemployment exemption as follows:

> If you document that you have been involuntarily separated from employment, [fill in name of guaranty agency] will not garnish your wages until you have been re-employed continuously for twelve (12) months. If you wish to claim this exemption from wage garnishment, you will need to complete Part II of the enclosed Request for Hearing form and send us written proof that you qualify for the exemption by MM?DD?YYY. . . . Failure to provide written proof may result in your claim of exemption being rejected as unsubstantiated. Id. at 533-34.

The DOE forms were not optional suggestions, they were mandatory. Id. at 534. Therefore, the debt collector used the government forms as directed. Id. The notice and the response form that the debt collector sent to the plaintiff followed the DOE forms verbatim adding only the plaintiff's specific information. Id.

The plaintiff sued the debt collector for violating the FDCPA because the text of the HEA contained no documentation or deadline requirement and the debt collector wrongfully required

her to come forward with documentation of her eligibility for the exemption and to do so by a certain date.  Id. at 535.  The debt collector asserted the bona fide error defense because it relied on the governmental form which resulted in a potential mistake of law under the HEA.  Id. at 537.  As for the first prong of the bona fide error defense, The Court found that the debt collector's presumed violation was not intentional because it followed the DOE form verbatim which showed that the debt collector did not intend for its notice to be false or unfair and instead showed that the debt collector intended to provide accurate information taken from the relevant regulatory agency.  Id.  The Court noted that the debt collector's actions differed little from debt collectors who follow safe-harbor language drafted by the court.  Id.  As for the second prong of the bona fide error test, the Court found that if the debt collector did in fact erroneously apply the HEA in its garnishment notice, it did so because the governmental agency invested with regulatory authority under the HEA misinterpreted the HEA.  Id. at 538.  This showed that any error by the debt collector in this regard was a good faith, genuine, bona fide error.  Id.  The Court also noted that because the debt collector followed the DOE form verbatim and did not exercise any "legal judgment" of its own, any mistake by the debt collector in the case was not a mistake of law because the misinterpretation of the HEA was done by DOE, not the debt collector.  Id. at FN 9.  As for the third prong of the bona fide error defense, the Court found that the debt collector employed a procedure reasonably adapted to avoid the assumed error because an entirely reasonably procedure to avoid misinterpreting and misapplying a federal statute is to adopt the legal interpretation of the federal agency charged with regulating under the statute in question.  Id. at 538.  The FDCPA does not require debt collectors to take every conceivable precaution to avoid errors; rather, it only required reasonable precaution.  Id. at 539.  Because the DOE form was mandatory and the DOE was the governmental agency charged with regulating under the HEA, it was reasonable for the debt collector to act as it did.  Id.  The Court found that as a matter of law, the debt collector was entitled to the bona fide error defense and was insulated from FDCPA liability on this issue.  Id.

The trend in case law appears to allow the bona fide error defense to insulate a debt collector from liability under the FDCPA where the law is unclear regarding a statute or law at issue.  See Gray v. Suttell & Assocs., 123 F.Supp. 3d 1283, 1289 (E.D. Wash. 2015); McCorriston v. L.W.T., Inc. 536 F.Supp. 2d 1268 (M.D. Fl. 2008).  Finally, when a debt collector reasonably relies on inaccurate information provided to the debt collector by his client

(the creditor) and uses that information in an attempt to collect a debt, the debt collector is entitled to the FDCPA's bona fide error defense and is insulated from liability under the FDCPA. Edwards v. McCormick, 136 F.Supp.2d 795, 804 (S.D. Ohio 2001).

Levy has asserted the bona fide error defense regarding any alleged violation of the FDCPA and asserts that it is insulated from liability pursuant to this defense. Mr. Denenberg's testimony regarding industry practice and the bona fide error are certainly relevant and admissible. In 2016, the Philadelphia Municipal Court required landlords to use a Philadelphia Municipal Court complaint form which included elements from the Philadelphia Property Maintenance Code and/or Administrative Code and was essentially the Philadelphia Municipal Court's interpretation of the Philadelphia Property Maintenance Code and/or Administrative Code requirements. The form required in pertinent part that the landlord attach a copy of a valid housing inspection license at the time of filing, state whether the subject premises was fit for its intended purpose, and state that the landlord was unaware of any open notice issued by the Department of Licenses and Inspections. In 2016, the Municipal Court did not require that a landlord attach of copy of a housing inspection license that was in effect for all periods of time for which the landlord was demanding rent and did not require that the landlord attach a certificate of rental suitability. The law was also unclear regarding whether a landlord could collect rent during time periods when the landlord did not have a valid housing inspection license. The Code does not provide a means for recovery by tenants for rents paid or damages made while the landlord was not in compliance with the Code, nor does it prohibit landlords from collecting back rent after returning to compliance. Richetti, 2017 WL 2782001 at *4. In 2016, a landlord in Philadelphia could file a complaint in the Philadelphia Municipal Court seeking a judgment for money, possession, or both against an alleged defaulting tenant even if the landlord did not possess a Certificate of Rental Suitability at the time of filing. City Ordinances Place Additional Burdens on Phila. Landlords, Alan Nochumson, Legal Intelligencer, June 13, 2016 © 2016 ALM Media Properties, LLC,<http://www.nochumson.com/articles/judge-tenants-entitled-return-rent-money>. Mr. Denenberg testified at his deposition that if a landlord did not possess a rental license during the time for which the landlord was demanding rent, the landlord may have been able to collect rent and may have been able to evict the tenant "depending on which judge you're in front of." *See 9/17/18 deposition of David Denenberg - Plaintiffs' Exhibit "A"- at pp. 60:20-62:1.*

The Philadelphia Municipal Court adopted an amendment to Rule 109(c) on January 2, 2018 which set forth additional requirements contained in the revised Philadelphia Municipal Court complaint form.  These additional requirements include setting forth "[t]hat, if applicable, the landlord is in compliance with the requirements of those sections of the Philadelphia Code that relate to Certificates of Rental Suitability, the City of Philadelphia Partners for Good Housing and Rental Licenses," and attaching to the complaint "[a] copy of the Rental License which was in force during any time that the plaintiff is seeking to collect rent and is in force at the time of filing . . . [and a] copy of the Certificate of Rental Suitability that was provided to the defendant."  Philadelphia Municipal Court Local Rule 109(c)(3)-(4).  The amendment to this Rule suggests that prior to its adoption on January 2, 2018, at the very minimum, there was confusion/lack of clarity with regard to these requirements, which presumably was the purpose for the amendments. After the amendments, Landlords filing complaints are now required to attach a Rental License (or housing inspection license) which was in force during any time that the landlord is seeking to collect rent.  Mr. Denenberg is and was on the Philadelphia Municipal Court Committee which was responsible for modifying Rule 109 and testified at length in his deposition about the procedures which were in effect prior to the amendment of that rule and subsequent to the amendment of that rule. Mr. Denenberg will also testify that Rule 109 was amended in order to clarify the rule including what had to be attached to the landlord-tenant complaint when it was filed and to try to remove some of the discretion of the Municipal Court Judges going forward. *See 9/17/18 deposition of David Denenberg - Plaintiffs' Exhibit "A"*-  at pp. 27:9-24, 28:1-4, 32:19-24, 33:1-2, 33:17-19, 103:10-24, 104:1-6, 105:24, 106:1-3.

Under the Richetti decision, it remains unclear whether a landlord-tenant complaint will be rejected if a landlord does not have a valid Rental License (or housing inspection license) which was in force during any time that the landlord is seeking to collect rent.  However, none of these requirements were in effect during the time when Levy initiated the LT Action on behalf of his client.  In fact, the procedure followed by Levy when he filed the LT Action on behalf of the landlord was standard, acceptable operating procedure in landlord/tenant Court in Philadelphia and was followed by Levy as well as multiple other attorneys in Philadelphia who did similar work and was accepted by the Municipal Court judges.  The foregoing testimony will be adduced at trial through Mr. Denenberg,  consistent with his testimony at the time of his deposition.

Levy's client, the landlord, apparently supplied certain inaccurate and/or incomplete information to Levy in connection with the landlord-tenant action.  Levy reasonably relied on the information provided by his client, as the Philadelphia Municipal Court deemed it acceptable for the landlord to make certain statements regarding compliance with the Philadelphia Property Maintenance Code and/or Administrative Code and to attach only a copy of a valid Rental License (or housing inspection license) at the time of filing a landlord-tenant complaint.  The law was, and still is, unclear regarding whether a landlord can collect back rent after coming into compliance with the Property Maintenance Code and/or Administrative code and specifically the Rental License (or housing inspection license) requirements.

In 2016, landlord-tenant attorneys who practiced in the Philadelphia Municipal Court would follow the Philadelphia Municipal Court form, rely on the representations of their clients, and file landlord-tenant complaints without attaching a copy of a Certificate of Rental Suitability and only attaching a copy of a valid Rental License (or housing inspection license) at the time of filing.  The Philadelphia Municipal Court would accept these filings, and Philadelphia Municipal Court judges would frequently award damages of back rent to landlords who were not in full compliance with the Philadelphia Property Maintenance Code and/or Administrative Code.  The precedent and practice in Philadelphia Municipal Court was for landlords to demand back rent, even if the landlords were not in compliance with the Philadelphia Property Maintenance Code and/or Administrative Code for the time periods during which the landlords were demanding back rent, and the Philadelphia Municipal Court judge may have or may not have awarded back rent to the landlord.   Levy did not commit a mistake of law in relying on the representations of his client and attaching a copy of a valid Rental License (or housing inspection license) at the time of filing, but rather followed legal precedent, the Philadelphia Municipal Court Rules verbatim, and industry practice regarding policies and procedures to avoid errors in attempting to collect this debt.  Mr. Denenberg's testimony regarding how the Philadelphia Municipal Court interpreted the Philadelphia Property Maintenance Code and/or Administrative Code, legal precedent, and industry practice in 2016 is relevant and admissible regarding Levy's bona fide error defense and Plaintiffs' Motion should be denied.

Plaintiffs erroneously argue that Mr. Denenberg knows nothing about the practices and procedures of attorneys in the Philadelphia Municipal Court. This argument is belied by the multiple examples and extensive testimony provided by Mr. Denenberg at his deposition, as

cited above, including the thousands of cases which he handled and the multiple cases which he observed being handled by other attorneys while present in the Philadelphia Municipal Court. Plaintiffs also argue that Mr. Denenberg has no knowledge of Levy's practices and procedures in Philadelphia municipal court. Of course, Mr. Denenberg was not asked to testify or provide an opinion concerning Mr. Levy's practices and procedures. Mr. Levy will provide that testimony himself at the time of trial and it will then be up to the fact finder to determine whether Levy's practices and procedures were consistent with the common practices and procedures testified to by Mr. Denenberg.

> **C. David Denenberg will be testifying within the parameters of Defendants' Offer of Proof, which was accepted by this Court pursuant to the Order dated August 6, 2018 denying Plaintiffs' first Motion to Exclude Testimony of David Denenberg.**

Defendants submitted an offer of proof regarding the testimony of David Denenberg on July 31, 2018.  The Court considered Plaintiffs' first Motion to Exclude Testimony of David Denenberg, Defendants' response to Plaintiffs' fist Motion to Exclude Testimony of David Denenberg, and Defendants' Offer of Proof Regarding the Testimony of David Denenberg when it issued the Order dated August 6, 2018 denying Plaintiffs' first Motion to Exclude Testimony of David Denenberg.  The Court denied the first Motion without prejudice presumably so that Plaintiffs could file a second motion if it became apparent after the deposition of David Denenberg that Mr. Denenberg would not be testifying consistent with the offer of proof.  It is clear based upon Mr. Denenberg's deposition testimony that he will be testifying consistent with the areas specified in Defendants' offer of proof.

V.   <u>CONCLUSION</u>

For the reasons stated above, defendants Bart E. Levy and Levy Law, LLC respectfully request that this Honorable Court deny the Second Motion to Exclude the Testimony of David

Denenberg filed by plaintiffs Gerrell Martin and Curtis Sampson and enter the attached Order.

                                      CLEMM AND ASSOCIATES, LLC

Dated: October 4, 2018              By:    _/s/ Mark C. Clemm_
                                           Mark C. Clemm, Esquire
                                           Katie M. Clemm, Esquire
                                           Attorneys for
                                           Defendants/Respondents